IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**DONALD LEROY COLLINS,**      Case No. 3:17 CV 2059

    Plaintiff,      Judge Jeffrey J. Helmick

    v.      Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.      REPORT AND RECOMMENDATION

### INTRODUCTION

Plaintiff Donald Leroy Collins ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 2). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated October 3, 2017). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be reversed and remanded.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB in July 2013, alleging a disability onset date of July 18, 2013. (Tr. 10). His claims were denied initially and upon reconsideration. (Tr. 116, 123). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 130-31). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on February 25, 2016. (Tr. 47-85). On April 27, 2016, the ALJ found Plaintiff not disabled in a written decision. (Tr. 25). The Appeals Council denied Plaintiff's request for review, making the hearing

decision the final decision of the Commissioner. (Tr. 1-3); *see* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely filed the instant action on October 2, 2017. (Doc. 2).

## FACTUAL BACKGROUND[1]

Personal Background and Testimony

Plaintiff was born in January 1963, making him 50 years old on the alleged onset date. *See* Tr. 188. Plaintiff worked as a carpenter from 1995 until his alleged onset date. (Tr. 49). During the hearing, Plaintiff had a panic attack. (Tr. 50). He has panic attacks two or three times a week, each lasting between one and two hours, he testified. (Tr. 61). He occasionally fished, though much less frequently than in the past. (Tr. 62). He missed two or three days a month at his last job due to depression. (Tr. 64). He also struggled to take criticism from supervisors, make deadlines, and work well with others. (Tr. 65). Plaintiff drove himself to the hearing. (Tr. 52). Plaintiff lived with his wife and cared for his disabled adult son. (Tr. 52-53).

Relevant Medical Evidence

From July 2013 through April 2015, Plaintiff regularly received psychiatric treatment from Coleman Psychiatry. (Tr. 370-411, 524-728; 733-752). At his initial July 2013 visit, Plaintiff said he had trouble focusing at work due to depression and a lack of sleep. (Tr. 374). During a February 2014 session, the psychiatric provider noted Plaintiff was restless and agitated, depressed, had worry and anxiety issues, as well as anger problems. (Tr. 556). Plaintiff also had severe psychosocial problems, including conflicts with others. (Tr. 557). In April 2014, Plaintiff's depression became more severe, his anger problems persisted, and he continued getting into

---

1. In his brief, Plaintiff challenges only the ALJ's consideration of state agency psychological expert opinions. As such, the undersigned summarizes only the medical evidence relevant to these claims. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issues not raised in opening brief waived).

2

conflicts with others. (Tr. 563-65). In an August 2014 session, Plaintiff's mood improved, and he said his current medications regime was the best he experienced. (Tr. 596). In November 2014, Plaintiff reported the medication worked well, and sought a letter stating he could not work for food stamp purposes. (Tr. 626). During a May 2015 session, a psychiatrist noted many of Plaintiff's previously noted symptoms improved, and Plaintiff seemed to be exaggerating the symptoms that remained. (Tr. 686-87).

In October 2013, Plaintiff underwent a consultative psychological evaluation with Michael Wuebker, Ph.D. (Tr. 452-58). Dr. Wuebker noted Plaintiff was clean, neat, and dressed appropriately. (Tr. 455). Throughout the interview, Plaintiff cooperated with Dr. Wuebker and maintained eye contact. *Id.* Dr. Wuebker had to redirect Plaintiff to the current subject on a few occasions. *Id.* Plaintiff did not appear under the influence of any substance and did not smell of alcohol. *Id.* He spoke clearly and understandably, and his thought content was logical and coherent. *Id.* Plaintiff told Dr. Wuebker he felt depressed, and Dr. Wuebker noted Plaintiff's mood was somewhat depressed and that he had a blunted affect. *Id.* Plaintiff reported twice-daily anxiety attacks, and daily suicidal ideation with no attempts. *Id.* Although he denied any hallucinations, Plaintiff was still "somewhat paranoid". *Id.*

Plaintiff was oriented to person, place, time, and situation. (Tr. 456). He counted backwards from twenty to one in ten seconds without any errors, but could not perform a serial seven-subtraction exercise. *Id.* His memory, recent and remote, appeared adequate to Dr. Wuebker. *Id.* Plaintiff's insight and ability to make common sense judgments were marginally intact. *Id.*

Dr. Wuebker diagnosed Plaintiff with mood disorder, not otherwise specified ("NOS"); anxiety disorder, NOS; cannabis dependence; alcohol dependence (sustained partial remission); and personality disorder, NOS. (Tr. 457). Dr. Wuebker assigned Plaintiff a GAF score of 50.[2] *Id.*

Opinion Evidence

In summarizing Plaintiff's functional capacity, Dr. Wuebker reported Plaintiff followed directions and instructions during the assessment, and had average intelligence. *Id.* Plaintiff would be expected to understand and apply instructions consistent with this level of intellectual functioning. *Id*. With concentration, persistence, and pace, Plaintiff had "some problems with these abilities in the work milieu but worked through the difficulty." (Tr. 458). He reported Plaintiff needed redirection back to the topic at hand. *Id*. He opined it "seem[ed] likely" Plaintiff's "mental health issues would affect" his abilities in concentration, persistence, and pace. *Id.* Dr. Wuebker noted Plaintiff interacted cooperatively with the examiner, however, his mental health issues would likely impact his ability to relate to co-workers and supervisors. *Id.*

Also in October 2013, Bruce Goldsmith, Ph.D., a state agency reviewing psychologist, gave great weight to Dr. Wuebker's examination. (Tr. 93). Dr. Goldsmith opined Plaintiff would have difficulty handling high amounts of stress due to bipolar disorder. (Tr. 95). Dr. Goldsmith also opined Plaintiff's flat affect would make concentrating difficult, limiting him to simple-to-

---

2. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). In the newest edition of the book, the GAF scale is no longer used as a diagnostic tool for assessing a patient's functioning because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *DSM-V-TR* at 16. The Sixth Circuit has explained that GAF scores still "may assist an ALJ in assessing a claimant's mental RFC." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 835 (6th Cir. 2016). A GAF score of 41-50 indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)" *DSM-IV-TR* at 34.

moderately complex tasks without a fast pace or unusual production demands. *Id.* Plaintiff, due to his affect and alcoholism, would have difficulty interacting with the public frequently, Dr. Goldsmith opined. (Tr. 96). He limited Plaintiff to occasional and superficial interpersonal contact. *Id.* Plaintiff also would have difficulty with frequent changes in the work setting. *Id.*

In March 2014, Robelyn Marlow, Ph.D., a second state agency psychologist, reviewed Plaintiff's medical records. (Tr. 112). She also assigned great weight to Dr. Wuebker's opinions, and concurred with Dr. Goldsmith's findings. (Tr. 108, 110).

VE Testimony

A vocational expert appeared and testified at the hearing before the ALJ. (Tr. 77-85). The ALJ asked the VE to consider an individual with Plaintiff's age, education, and work experience, who was limited in the way the ALJ determined Plaintiff was. (Tr. 15, 79-82). The VE testified such an individual could not perform Plaintiff's past work, but could perform other jobs in the national economy such as a dining room attendant, laundry worker, or an assembler. (Tr. 79-80).

ALJ Decision

In her April 27, 2016 decision, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017, and had not engaged in substantial gainful activity since his alleged onset date of July 18, 2013. (Tr. 12). He had severe impairments, including psychiatric conditions variously described as bipolar I disorder, mood disorder, anxiety disorder, and panic disorder with agoraphobia; alcoholism/alcohol dependence; cannabis dependence; chronic obstructive pulmonary disease / centrilobular emphysema; moderately severe obstructive airways disease; and daytime somnolence, but these impairments did not meet or medically equal the severity of a listed impairment individually or in combination. (Tr. 12-13).

After consideration of the record, the ALJ concluded Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) in that the claimant can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He can sit for 6 hours out of an 8-hour workday and can stand and/or walk for 6 hours out of an 8-hour workday. He can never climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, crouch, kneel, stoop, and crawl. The claimant must avoid more than occasional exposure to extreme heat or cold, humidity, fumes, odors, gases, dust, and other pulmonary irritants. The claimant can understand, remember, and carry out simple, routine tasks, can make judgments on simple work, and respond appropriately to usual work situations and changes in a routine work setting that has few and expected changes. The claimant can have no interaction with the general public, occasional interaction with supervisors, and rare (defined as less than occasional but not totally precluded) interaction with coworkers with no team or tandem tasks.

(Tr. 15).

The ALJ then concluded Plaintiff was unable to perform any past relevant work. (Tr. 23). However, considering Plaintiff's age, education, work experience, and RFC, he could perform other jobs that exist in significant numbers in the national economy. (Tr. 24). Therefore, the ALJ concluded Plaintiff was not disabled from his alleged onset date of July 18, 2013, through the date of her decision. (Tr. 25).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact

if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in

7

the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff, in his lone assignment of error, argues the ALJ's opinion must be remanded because she failed to properly explain her treatment of the State agency psychological experts. (Doc. 12, at 7). He argues the State agency psychologists provided more restrictive limitations than the ALJ assessed in her RFC, and the ALJ did not adequately explain her failure to include those limitations. *Id.* The Commissioner argues the ALJ's decision is supported by substantial evidence, and she properly addressed the state psychologist opinions, which she contends were less restrictive than the ALJ's RFC. (Doc. 13, at 5-12). For the following reasons, the undersigned recommends the ALJ's decision be reversed and remanded.

Two state agency psychologists, Dr. Goldsmith and Dr. Marlow, reviewed Plaintiff's medical records. (Tr. 86-96, 100-14). The ALJ evaluated their identical opinions together:

> However, only partial weight is accorded to the assessments of the psychological consultants (1A and 3A) who opined at the initial and reconsideration levels of review that the claimant can perform simple to moderately complex tasks that are not fast paced or have unusual production demands; is limited to occasional and superficial interpersonal contact; and will have difficulty with frequent changes in a work setting. (*Id.*). The reviewing consultants' opinions were not inconsistent with the evidence at the time of their reviews and their opinions are well supported by citations to the existing medical record. (*Id.*). However, later submitted medical evidence (15F-23F) and the testimony of the claimant, supports greater social limitations as assessed herein.

(Tr. 22).

Both state agency psychologists offered identical mental RFCs, which included finding Plaintiff had moderate limitations in maintaining attention and concentration for extended periods, in completing a normal workday and workweek without interruptions, and performing at a consistent pace without an unreasonable number and length of rest periods. (Tr. 95, 110-11). Both psychologists also found Plaintiff had social interaction limitations, including moderate limitations in his ability to interact with the public, in accepting instructions and responding appropriately to criticism, and in his ability to get along with his peers. (Tr. 95-96, 111).

Plaintiff's argument addresses two specific portions of the RFC: (1) that the ALJ did not impose more restrictive social limitations as the ALJ said she would, and (2) that a pace restriction was impermissibly excluded from the ALJ's RFC determination. The undersigned addresses these arguments separately below.

<u>Social Interaction</u>

The ALJ is responsible for determining a claimant's RFC based on all relevant evidence. 20 C.F.R. § 404.1545(a)(3). Even when assigning pieces of evidence significant weight, the ALJ does not have to adopt any RFC determinations verbatim. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides "great weight" to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.").

Non-examining sources are typically given less weight than examining sources, who typically receive less weight than treating sources. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). However, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996

9

WL 374180, *3; *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (state-agency medical consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act;" thus, in some cases, "an ALJ may assign greater weight to a state agency consultant's opinion than to that of a treating ... source." (first alteration in original) (internal quotation marks omitted)); *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence."). The ALJ is required to consider their opinions, along with the rest of the relevant evidence in the record. 20 C.F.R. § 404.1545(a)(3). Unlike treating sources, however, the ALJ is not required to provide good reasons when discounting non-examining sources. *Smith*, 482 F.3d at 875-76 ("[T]he SSA requires ALJs to give reasons for only *treating* sources.") (emphasis in original).

As noted above, the ALJ assigned only partial weight to the non-examining State agency psychologists. Plaintiff disputes the ALJ followed through with her own assessment requiring "greater social limitations" (Tr. 22), arguing her RFC was actually less restrictive than the RFC provided by the State agency psychologists. (Doc. 12, at 9) ("[T]he ALJ's determined RFC was actually less restrictive than those opinions offered by State agency psychological experts, and the ALJ failed to reconcile this inconsistency."). The State agency psychologists determined Plaintiff was limited to occasional and superficial interpersonal contact, and would have difficulties interacting with the public frequently (Tr. 96, 111), while the ALJ restricted Plaintiff to "no interaction with the general public, occasional interaction with supervisors, and rare (defined as less than occasional but not totally precluded) interaction with coworkers with no team or tandem tasks." (Tr. 15). The ALJ, as she said she would, imposed greater restrictions on Plaintiff's

10

interaction with the public, along with permitting occasional interpersonal contact with supervisors, and less than occasional interpersonal contact with any co-workers. *Id.* The ALJ's restrictions did not permit greater frequency of interpersonal contact than the State agency psychologists. For the general public and coworkers, the ALJ provided a more restrictive RFC than the occasional interpersonal contact restriction levied by the State agency psychologist. *Compare* Tr. 15 *with* Tr. 96, 111. This is not an inconsistency in the ALJ's opinion.

Plaintiff contends this is still improper, because limitations on the quality of interpersonal contact (occasional and *superficial* interpersonal contact) were not included in the final RFC. (Doc. 12, at 10) (citing Tr. 96, 111). Contrary to Plaintiff's argument, the ALJ restricted Plaintiff from "team or tandem tasks" (Tr. 15), which logically require more than superficial interpersonal contact. This is a restriction on the quality of interpersonal contact. The ALJ has no obligation to adopt the RFC of a non-examining source verbatim, even when assigning an opinion great weight. *Reeves*, 618 F. App'x at 275. In the present case, the ALJ assigned only partial weight to the State agency psychologists, because they did not review the entire record available to the ALJ. (Tr. 22). The ALJ properly considered the State agency opinion, and adopted the restrictions she found substantially supported.

Additionally, the ALJ reviewed Plaintiff's social interaction abilities, and provided substantial evidence for her ultimate decision. (Tr. 14). For example, earlier in the opinion, the ALJ considered Plaintiff's social functioning abilities, finding Plaintiff had moderate difficulties stemming from panic attacks and anxiety symptoms *Id.* However, she also noted Plaintiff interacted with friends and attended fishing tournaments. *Id.* The ALJ also considered evidence that Plaintiff exaggerated his mental health symptoms. *Id.* (citing Tr. 686 ("Appe[a]rs to be exaggerating symptoms")). This evidence comes from records the State agency psychologist did

11

not review, consistent with the ALJ's explanation for the weight assigned to the State agency opinions. (Tr. 22).

These reasons provide substantial evidence for the ALJ's decision to deviate from the State agency psychologists' opinions on the social limitations as indicated. (Tr. 22). Therefore, there is no error in the ALJ's assessment of Plaintiff's social interaction symptoms.

Pace Restriction

Plaintiff next argues the ALJ erred by not including pace restrictions in her RFC. (Doc. 12, at 9). The ALJ limited Plaintiff to "simple, routine tasks", but included no pace restriction in the RFC. (Tr. 15). The State agency psychologists, however, restricted Plaintiff to "simple to moderately complex tasks that are not fast paced or have unusual production demands." (Tr. 95, 111). Plaintiff argues this difference was not adequately explained by the ALJ. (Doc. 12, at 9). The ALJ's opinion failed to "build an adequate and logical bridge between the evidence and the result", Plaintiff argues, making the lack of pace restrictions unsupported by substantial evidence. *Id*. (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)). The Commissioner argues the ALJ's RFC was more restrictive than the State agency psychologists, and was supported by substantial evidence. (Doc. 13, at 7).

An ALJ can consider all the medical opinion evidence without directly addressing every piece of evidence in the opinion. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). However, if a medical source's opinion contradicts the ALJ's RFC finding, an ALJ must explain why he did not include the medical source's limitation in his determination of the claimant's RFC. *See* SSR 96-8p, 1996 WL 374184, at *7. Social Security Ruling 96-8p provides: "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the

opinion was not adopted." *Id.* Courts in the Northern District of Ohio have held that an ALJ's failure to comply with this regulation requires reversal. *See Fleischer*, 774 F. Supp. 2d at 881 (ALJ's failure to address a medical source's opinion which conflicted with RFC constituted reversible error); *Thompson v. Comm'r of Soc. Sec. Admin*, 2014 WL 356974, at *4 (N.D. Ohio) (remanding because ALJ did not explain why she failed to adopt in the RFC a conflicting limitation assigned by medical sources); *Moretti v. Colvin*, 2014 WL 37750, at *10 (N.D. Ohio) (remanding because ALJ failed to explain why she did not include in the RFC a limitation assigned by a medical source).

> Here, the ALJ assigned partial weight to the State agency psychologists because:
>
> [t]he reviewing consultants' opinions were not inconsistent with the evidence at the time of their reviews and their opinions are well supported by citations to the existing medical record. (Id.). However, later submitted medical evidence (15F-23F) and the testimony of the claimant, supports greater social limitations as assessed herein.

(Tr. 22). She found the psychologists' opinions were not inconsistent with the evidence and supported by the record, but only gave partial weight because she believed later submitted evidence and testimony "supported greater *social* limitations". *Id*. (emphasis added). In other words, the ALJ found the psychologists' opinions supported, until she heard Plaintiff's testimony and reviewed the later submitted medical evidence. *Id*. The ALJ's final phrase emphasizes a need to deviate from the state agency physician opinions in social interactions only. *Id*. It does not speak to pace.

Importantly, earlier in the opinion, the ALJ found Plaintiff had moderate difficulties in concentration, persistence, or pace. (Tr. 14). The ALJ noted the restriction, but did not discuss it further. *Id*. Her finding was based on treatment notes showing Plaintiff had difficulty focusing on his job due to a lack of sleep and depression, while also noting Plaintiff managed to care or many

13

dogs and care for his cognitively impaired son. (Tr. 14) (citing Tr. 374, 456, 631). However, she did not explicitly discuss Plaintiff's ability to maintain any sort of pace throughout the opinion, and did not include one in her RFC. Notably, the only other opinion evidence in the record—from Dr. Wuebker—also noted possible pace difficulties. *See* Tr. 458 ("It would seem likely that his mental health issues would affect these skills in a work arena ["attention and concentration, and maintaining persistence and pace, and to perform simple tasks and multi-step tasks"].").

The ALJ's omission of any discussion of a pace restriction is reversible error here. As detailed above, if an RFC conflicts with a medical source opinion, the ALJ is required to explain why conflicting portions were not adopted. *See* SSR 96-8p, 1996 WL 374184, at *7. And, as in this case, the ALJ cannot totally omit a pace restriction without explaining her reasons for doing so. *Moretti*, 2014 WL 37750, at *10.

In sum, the ALJ's failure to include a pace restriction, or explain her reason for not doing so, is reversible error. Accordingly, the undersigned recommends the Court remand the case to the Commissioner to correct this omission.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB unsupported and recommends the decision be reversed and remanded.

    s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time

WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).